IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

|  |  |  |
|---|---|---|
| **DANNY J. LINEBAUGH,** | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 10-1064-AA |
| | ) | |
| v. | ) | OPINION AND |
| | ) | ORDER |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

AIKEN, District Judge:

Plaintiff Danny Linebaugh ("Linebaugh") seeks judicial review of the Social Security Commissioner's final decisions denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is REVERSED and REMANDED for the immediate

1 - OPINION AND ORDER

calculation and award of benefits.

## BACKGROUND

Born in 1951 (Tr. 71), Linebaugh has a high school education. Tr. 98. He applied for benefits on November 3, 2003, alleging disability due to an ankle injury, back injury, and amputated left thumb. Tr. 93. The Commissioner denied his application initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on April 3, 2006. Tr. 344-80. The ALJ subsequently found Linebaugh not disabled on May 26, 2006 (Tr. 28-38), and Linebaugh appealed to this court. This court affirmed the ALJ's decision regarding Linebaugh's credibility and the opinion of two physicians, but remanded the matter for further proceedings on December 10, 2008, instructing the Commissioner to reconsider the lay testimony, the Veteran's Administration disability determination, and Linebaugh's depression. Tr. 403-09. The Appeals Council subsequently remanded the case back to the ALJ, who held a second hearing on April 22, 2010. Tr. 591-643. The ALJ held a second hearing on April 22, 2010 (Tr. 591-643), again found Linebaugh not disabled on May 11, 2010. Tr. 384-395.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment"

2 - OPINION AND ORDER

that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509; 404.1509(a)(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R. § 404.1520(e) Social Security Ruling ("SSR") 96-8p (available at 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can perform his past relevant work, he is not disabled.  *Id.*  If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f).  *Yuckert,* 482 U.S. at 142; *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).  If the claimant cannot perform such work, he is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett,* 180 F.3d at 1098.  If the process reaches the fifth step, the burden shifts to the Commissioner to show that

"the claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience."

*Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §

404.1520(g).

## THE ALJ'S FINDINGS

At step two in the sequential proceedings, the ALJ found Linebaugh's left ankle injury,

lumbar and cervical spine degenerative disc disease, obesity, partial hearing loss with tinniuts,

and partial amputation of his left thumb "severe." Tr. 396. The ALJ found that these

impairments did not meet or equal a listed disorder, and found Linebaugh retained the RFC to

perform light work with the following limitations:

> [H]e was able to lift/carry 20 pounds occasionally and 10 pounds
> frequently. He could stand/walk six out of eight hours. He could
> sit without restrictions. Pushing and pulling were limited by these
> weights. He could occasionally climb ladders, ropes, and
> scaffolds. He could only occasionally stoop and crouch. He could
> not use his left hand to grasp even large objects, grip, or pinch. He
> could not bilaterally perform fine manipulation or fine
> fingering/pinching that requires an opposing, complete left thumb.
> He had to avoid loud work settings that could further decrease his
> hearing. Tr. 388.

At step four, the ALJ found that this RFC allowed Linebaugh to perform his past relevant work

as a roadside flagger. Tr. 392. Subsequently, the ALJ also found that Linebaugh could perform

work in the national economy at step five, and therefore found him not disabled through his

March 31, 2005, date last insured. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

4 - OPINION AND ORDER

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359

F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but

less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th

Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d

715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the

Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable

interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational

reading. *Id.*, *see also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon

reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray v. Comm'r, Soc. Sec.*,

554 F.3d 1219, 1225-56 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196

(1947)); *see* also *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Linebaugh asserts that the ALJ improperly evaluated (1) the opinion of treating physician

Terrence Sedgewick, M.D.; (2) the lay testimony; (3) his hearing loss; and (4) the Veteran's

Administration ("VA") disability determination regarding his depression. Linebaugh

consequently asserts that the ALJ should have found him disabled at steps four and five of the

5 - OPINION AND ORDER

sequential proceedings.

## I.    Medical Source Statements

Linebaugh asserts that the ALJ failed to discuss treating physician Dr. Sedgwick's

opinions, which were made in July 1996 and November 1997. Pl.'s Opening Br. 11. The

Commissioner argues that, because Dr. Sedgwick's July 31, 1996, opinion was rendered before

Linebaugh's November 2, 2002, alleged disability onset date, it is of "limited relevance." Def.'s

Br. 9.

### A.    Standards

The Commissioner's regulations distinguish between treating, examining, and reviewing

physicians. 20 C.F.R. § 404.1527(d),(f). The ALJ must generally accord greater weight to the

opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d

821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an

examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ

must give "specific and legitimate reasons" for discrediting a treating physician's opinion in

favor of an examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions

that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute

substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*,

81 F.3d at 831.

### B.    Analysis

The record shows that on July 31, 1996, orthopedist Dr. Sedgwick wrote a letter stating

that Linebaugh's March 1995 ankle fracture, surgery, and subsequent chondral damage limited him to sedentary work. Tr. 253-54. On November 17, 1997, Dr. Sedgwick wrote that, based upon the 1996 physical capacity evaluation, Linebaugh would have difficulty standing or walking. Tr. 252. The ALJ limited Linebaugh to "light" work, with some additional postural limitations, but specifically found that Linebaugh could stand or walk six out of eight hours. Tr. 388. In making this finding, the ALJ cited Dr. Sedgwick's opinion, and found it "outside the relevant adjudicatory period." Tr. 391. The ALJ subsequently cited a reviewing physician's opinion finding that Linebaugh "continued to improve and did not receive significant follow-up care," and also noted that Linebaugh "did not follow any kind of treatment plan other than over-the-counter medications." *Id.*

The record shows that Linebaugh's treating physicians continued to report his history of ankle fracture and pain until March29, 2010, when the record closes. Tr. 176, 309, 530-31, 563, 572, 582. Further, examining physician Lowan Stewart, M.D., assessed chronic left ankle pain secondary to fracture on December 30, 2003. Tr. 161. Though Dr. Stewart also found that Linebaugh could stand and walk six hours in an eight-hour workday, he stated this activity "would be limited by [Linebaugh's] subjective complaint of pain." Tr. 161-62. Dr. Stewart also opined that Linebaugh might need an assistive device such as a cane. Tr. 162. The record later shows that treating physicians charted Linebaugh's use of a cane during the adjudicatory period. Tr. 563, 582.

The ALJ was correct in determining that Linebaugh did not receive "significant" follow-up care regarding his ankle injury as no provider performed invasive procedures or prescribed

pain medication. However, as noted, the record shows that Linebaugh continued to receive

diagnoses and medical evaluations and reports relating to his ankle impairment. The medical

record does not in fact show that Linebaugh's ankle impairment "continued to improve;" the

record shows that Linebaugh continued to report pain associated with the impairment. Although

an ALJ may reject physician opinions predicated upon reports of a claimant found not credible,

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), the ALJ presently made no such

finding. This court cannot now affirm the ALJ's decision based upon reasoning the ALJ did not

assert. *Bray*, 554 F.3d at 1225-26. In summary, the ALJ's reliance upon "improvement" of

Linebaugh's ankle impairment in rejecting Dr. Sedgwick's opinion is not based upon the record,

and therefore, is not sustained. The effect of this error is discussed below.

## II.    Lay Testimony

Linebaugh asserts that the ALJ erroneously assessed statements submitted by lay

witnesses April May and Dasha Wright. Pl.'s Opening Br. 12-15.

### A.    Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d),

404.1545(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Friends and family

members in a position to observe the claimant's symptoms and daily activities are competent to

testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.

1993). The ALJ may not reject such testimony without comment and must give reasons germane

to the witness for rejecting her testimony. *Bruce*, 557 F.3d at 1115; *Nguyen v. Chater*, 100 F.3d

1462, 1467 (9th Cir. 1996).

**B.    Analysis**

**1.    Lay Testimony and RFC Analysis**

The ALJ noted the statements submitted by May and Wright. Tr. 290. Regarding both, the ALJ concluded their testimony was credible "to the extent" it was "consistent with the objective medical evidence and residual functional capacity assessment." *Id.* This analysis reverses the manner in which an ALJ considers a claimant's credibility. The ALJ must consider lay testimony in construing the claimant's RFC assessment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). As the Commissioner concedes, Def.'s Br. 11, the ALJ may not dismiss testimony because it is inconsistent with a conclusion that must itself address that testimony. This reasoning is circular and is not sustained by this court. *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010); *see* also *Cohoon v. Astrue*, No. 10-1219, slip op. at 12-13 (D. Or. August 30, 2011); *Young v. Astrue*, No. 09-23 (available at 2010 WL 331781 at *5 (D. Or. 2010)).

Further, the ALJ's decision must be based upon substantial evidence. 42 U.S.C. § 405(g); *Batson*, 359 F.3d at 1193. An RFC assessment is a legal conclusion. *See* 20 C.F.R. 416.945 (describing RFC analysis under the Commissioner's regulations). Therefore, the RFC itself cannot constitute substantial evidence, and is again an insufficient basis for dismissing the lay testimony.

For all of these reasons, the ALJ's reliance upon his own RFC assessment in rejecting the lay testimony is not sustained.

///

## 2.    Lay Testimony and the Medical Record

The ALJ found May's statements "credible to the extent they are consistent with the objective medical evidence," and applied the same reasoning to Wright's testimony. Tr. 390. Linebaugh asserts that a rejection of lay testimony because it is "unsupported" by the medical evidence is erroneous. Pl.'s Opening Br. 14. The Commissioner responds that while the ALJ may not reject testimony "unsupported" by the medical record, he may reject testimony "inconsistent" with the medical record. Def.'s Br. 10.

This court recently reaffirmed that an ALJ may not reject lay testimony pertaining to the severity of a claimant's established impairment simply because it is unsupported by the medical record. *Glover v. Astrue*, No. 10-824, slip op. at 5-6 (D. Or. Sep. 20, 2011) (Hernandez, J.) (citing, e.g., *Bruce*, 557 F.3d at 1116; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). Here the court reasoned that the Ninth Circuit's 2008 determination of the matter in *Bruce*, holding that the ALJ may not reject lay testimony describing the severity of a claimant's impairment simply because it is unsupported by the medical record, is in turn consistent with its previous holding in *Vincent*, which stated that an ALJ may reject lay testimony purporting to establish an impairment if it conflicts with the medical evidence. *Glover*, slip op. at 3. The Ninth Circuit holding in *Lewis v. Astrue*, 236 F.3d 503, 512 (9th Cir. 2001), allowing citation to medical evidence as a reason for rejecting lay testimony addressing the severity of an already-established impairment therefore represents an aberration. *Id.* at 6. The court also noted that this interpretation of *Bruce*, *Lewis*, and *Vincent*, is consistent with both the Social Security Act and the Commissioner's regulations. *Id.* at 5-6.

I adopt this reasoning. The Commissioner's assertion that a distinction arises between lay testimony that is "inconsistent" with the medical evidence and "unsupported" by the medical evidence is not persuasive. Both amount to rejecting testimony describing a claimant's purported limitations simply because the extent of such limitations are not assessed by a medical provider. The authorities discussed above clearly reject such reasoning. The ALJ's rejection of the testimony of May and Wright to the extent it is simply inconsistent with the medical record is therefore not sustained.

### 3.    Lay Testimony and Claimant Testimony

Finally, the Commissioner asserts that the ALJ properly rejected Wright's testimony because it "mirrored" Linebaugh's own testimony, which the ALJ found not entirely credible. Def.'s Br. 11. The ALJ may reject a claimant's testimony that merely reflects the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). However, the ALJ presently made no such finding. As noted, this court may not sustain an ALJ's decision based upon reasoning the ALJ did not assert. *Bray*, 554 F.3d at 1115-16. The Commissioner's reliance upon *Valentine* is therefore misplaced.

### 4.    Effect of the ALJ's Error

May wrote that Linebaugh can prepare only simple meals because he is limited in standing (Tr. 121), and is unable to perform his former carpentry hobbywork as he is "uanbel to be on leg." Tr. 123. She wrote that Linebaugh can lift fifteen pounds, walk one or two blocks, and stand for five to ten minutes before his leg goes numb. Tr. 123A. Finally, May endorsed limitations in lifting, squatting, bending, standing, walking, kneeling, and stair climbing. *Id.*

Wright testified at Linebaugh's April 22, 2010 hearing. Tr. 621-34. She stated that, since February 2004, Linebaugh could stand for ten to fifteen minutes, and uses a cane for walking or when doing things such as "standing outside talking to the neighbors." Tr. 623. When washing dishes he does not use his cane and "usually stands there for a few minutes." Tr. 623-24. Wright also testified that Linebaugh drives her to the grocery store, but does not go inside the store. Tr. 625. Linebaugh has difficulty walking on their inclined driveway, and Wright stated that he strains and puts more weight on his cane to relieve weight from his ankle. Tr. 625. Finally, she stated that Linebaugh's limitations are "getting a little worse." Tr. 628.

This court cannot find an ALJ's omission of lay testimony harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006). The ALJ found that Linebaugh could perform light work (Tr. 387-88), which entails lifting up to 20 pounds at a time, with frequent lifting of 10 pounds. 20 C.F.R. § 404.1567(b). Jobs in this category may require "a good deal of walking or standing." *Id.* The ALJ also specifically found that Linebaugh could lift and carry 20 pounds occasionally, and 10 pounds frequently, and "occasionally" climb ropes, ladders and scaffolds, without any restrictions regarding the use of a cane or uneven terrain. Tr. 388. The limitations described by May and Wright are inconsistent with such work. This court therefore cannot find the ALJ's errors in assessing their testimony harmless. The effect of this error is addressed below.

**III.   Hearing Loss and RFC Assessment**

Linebaugh asserts that the ALJ's RFC assessment fails to account for his hearing loss.

Pl.'s Opening Br. 15.

### A.    Standards

The ALJ's RFC assessment represents "the most you can still do despite your
limitations," and is based upon "all the relevant evidence in your case record." 20 C.F.R. §
404.1545(a)(1). The RFC includes all "total limiting effects" of a claimant's severe and non-
severe impairments, and may also include the effects of pain and other symptoms causing
functional limitations. 20 C.F.R. § 404.1545(e).

### B.    Analysis

The ALJ's RFC analysis found that Linebaugh must "avoid loud work settings that could
further damage his hearing." Tr. 388. The ALJ reasoned that a July 2003 audiology exam "did
not provide any specific functional limitations with regard to his hearing or tinnitus
impairments." Tr. 391.

Linebaugh now argues that, due to his hearing loss, he cannot hear "accurately," and that
this constitutes a further work-related limitation. Pl.'s Opening Br. 15.

The record shows that on July 12, 2003, an audiologist conducted a hearing examination
and found "moderate to severe notched sensorineural hearing loss with tinnitus." Tr. 529.
Medical providers also noted Linebaugh's progressive hearing loss between throughout the
period under review. Tr. 176, 187, 196, 530-31, 572. Further, as discussed above, lay witness
Dasha Wright testified that she must sit on his right side so that he could better hear her, and that
Linebaugh requires high volume on the television. Tr. 631.

The Commissioner now argues that Linebaugh cannot assert functional limitations

13 - OPINION AND ORDER

unsupported by a medical provider's notes. Def.'s Br. 12. This submission flatly misconstrues the relevant legal standards. Once a claimant establishes a medically-determinable impairment, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony addressing his symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ may not reject a claimant's symptoms testimony "solely because" it is unsupported by the medical record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) *(en banc)*. Although Linebaugh's credibility is not presently at issue, the Commissioner cannot now assert that the ALJ may reject Linebaugh's symptom testimony regarding his hearing difficulties because the extent of his symptoms are unsupported by the medical record. This reasoning is contrary to the authorities discussed above and is therefore rejected.

The Commissioner also asserts that "evidence that a claimant stopped working due to reasons unrelated to a given impairment indicates that a particular impairment is not disabling." Def.'s Br. 13 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)). This submission misconstrues the relevant inquiry regarding a claimant's RFC assessment. The RFC includes all of a claimant's limitations, including those stemming from a non-severe impairment. 20 C.F.R. § 404.1545(e). It follows that each impairment, by itself, need not be disabling. The Commissioner's reasoning that Linebaugh did not stop working due to his hearing impairment is therefore irrelevant to an omission from a claimant's RFC assessment.

Further, the Commissioner's authority indicates that a claimant's diabetes "was controlled by medication, and was not the reason he stopped working." *Tommasetti*, 533 F.3d at 1040. No

14 - OPINION AND ORDER

evidence suggests that Linebaugh's hearing difficulties were "controlled;" the evidence discussed above instead suggests that he could not hear well in specific circumstances. The Commissioner's reasoning on this matter is also rejected.

Because the ALJ's RFC assessment must include non-severe limitations, the ALJ's failure to include Linebaugh's documented hearing loss in his RFC assessment is erroneous. The effects of this error are discussed below.

## IV.   Veteran's Administration Disability Finding

Linebaugh also asserts that the ALJ improperly addressed the Veteran's Administration disability finding following this court's remand order. Pl.'s Opening Br. 8-10. He specifically points to the VA findings regarding his depression. *Id.*

### A.   Standards

The ALJ must "ordinarily give great weight" to Veteran's Administration disability determinations. *McCartey v. Massinari*, 298 F.3d 1072, 1076 (9th Cir. 2002). This is because there is a "marked similarity" between the two programs. *Id.* Further, the Ninth Circuit specifically instructs that an ALJ may not dismiss a VA disability determination as irrelevant to a SSA disability determination. *Valentine*, 574 F.3d at 695 (citing *id.*). Deviation from a District Court's specific instructions expressed in its remand order in a social security disability proceeding is reversible error. *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989).

### B.   Analysis

#### 1.   The ALJ's May 26, 2006 Decision

The ALJ's May 26, 2006, decision discussed Dr. Sedgewick's opinion and concluded, in

the same paragraph, "I clarify the standards of disability followed by VA are different from

SSA's, and as a result, I am not bound by any findings or decision of the VA." Tr. 35. This

court's December 10, 2008 Order explicitly rejected this analysis, and remanded the matter for

further proceedings to address the VA disability determination under the proper legal standards.

Cite; Tr. 411 (citing *McCartey*, 298 F.3d at 1076).

## 2.      The ALJ's May 11, 2010 Decision

The ALJ's second decision presently under review directly cited *McCartey*, and again

concluded:

> VA standards for rating disability are not equivalent to those of the
> Social Security Administration. The Social Security
> Administration utilizes an all or nothing, total disability, standard.
> Unlike the VA there is no partial disability under Social Security
> law. Moreover, the VA maintains a different concept of
> "employability" and does not evaluate or consider what an
> individual can do in a work setting when assessing disability. In
> this case, the VA's determination is not inconsistent with the
> findings herein. Tr. 392.

This language essentially repeats the ALJ's May 26, 2006, analysis, which this court

explicitly rejected. Further, the Ninth Circuit flatly instructs that, under *McCartey*, an ALJ may

never reject a VA disability determination simply because the VA and SSA disability programs

have distinct concepts of both disability and employability. *Valentine*, 574 F.3d at 695. The

ALJ's reasoning, or lack thereof, is thus clear deviation from this court's December 10, 2008

remand instructions and established Ninth Circuit rulings. The ALJ's findings regarding

Linebaugh's VA disability ratings are not sustained.

///

## V.    Step Four and Five Findings

Finally, Linebaugh asserts that the ALJ erroneously found that he could perform his past

relevant work and work in the national economy at steps four and five in the sequential

proceedings. Pl.'s Opening Br. 17-18.

### A.    Standards

At steps four and five in the sequential proceedings, the ALJ respectively determines if

the claimant can perform his past relevant work, or perform work in the national economy. 20

C.F.R. § 404.1520(a)(4)(iv-v). Here the ALJ may take administrative notice of the occupational

data contained in the *DOT*, or draw upon a vocational expert's testimony to show that a claimant

can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The

ALJ's questions to the vocational expert must include all properly supported limitations,

*Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

### B.    Analysis

Relying upon the vocational expert's testimony, the ALJ presently determined that

Linebaugh could perform his past relevant work as a roadside flagger at step four, or perform

work in the national economy as marker or bottling line attendant at step five. Tr. 394.

Linebaugh contends that these occupations are inconsistent with his identified hearing loss and

ALJ's finding that he must avoid loud work settings. Pl.'s Opening Br. 16-17.

Linebough's assertion is correct. The vocational expert testified that "hearing's

important" in performing work as a roadside flagger. Tr. 641. The DOT further states that the

marker and bottling line attendant positions require occasional hearing and also have "level four"

17 - OPINION AND ORDER

noise intensity levels. DOT (available at 1991 WL 687992 and 1991 WL 687971). "Level four"

noise levels indicate "loud." *Id.* Such an environment is inconsistent with the ALJ's finding that

Linebaugh must "avoid loud work settings that could further damage his hearing." Tr. 388. The

ALJ's reliance upon this data in finding Linebaugh could perform work in the national economy

is therefore flawed and is not sustained.

## REMAND

The ALJ erroneously evaluated Dr. Sedgwick's opinion, the lay testimony, the effects of

Linebaugh's hearing loss, and the VA disability determination. Consequently, the ALJ's RFC

analysis was flawed, and the ALJ made additional errors in his step four and five findings. His

decision cannot be sustained.

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence

is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-

39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The court

may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a

claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate

award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for

18 - OPINION AND ORDER

rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348).

As noted, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Sedgwick's opinion, the lay testimony, and the evidence pertaining to Linebaugh's hearing loss. In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong. *Strauss*, 635 F.3d at 1138. Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Id.* Specifically, Dr. Sedgwick stated that Linebaugh is limited to sedentary work. Tr. 253-54. The lay testimony additionally indicates that Linebaugh cannot stand or walk six hours per day. Tr. 123A, 623, 625. Such limitations limitation are also consistent with sedentary, rather than light, work. 20 C.F.R. § 404.1567(a-b).

Further, the vocational expert testified that Linebaugh had no transferable skills. Tr. 641. The Commissioner agrees that no evidence addresses whether Linebaugh's high school education

19 - OPINION AND ORDER

provided for "direct entry into skilled work" under the medical-vocational guidelines. Def.'s Br. 15. The medical-vocational guidelines instruct, by example, that individuals restricted to sedentary work and approaching advanced age (i.e. age 50-54), who cannot perform past relevant work and have no transferable skills, are "ordinarily" disabled. 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(g). Because Linebaugh was 51 years old on his alleged onset date and 54 years old on his date last insured, the Commissioner's medical-vocational guidelines therefore direct a finding that Linebaugh was disabled.

The improperly omitted evidence establishes that Linebaugh is disabled under the Commissioner's medical-vocational guidelines. Consequently, this testimony the court credits this evidence and Linebaugh is disabled under the Commissioner's regulations.

## ORDER

For these reasons, this Court REVERSES the Commissioner's decision and REMANDS this matter pursuant to 42 U.S.C. § 405(g) for calculation and award of benefits consistent with this opinion.

IT IS SO ORDERED.

Dated this —day of September, 2011.

Ann Aiken
United States District Judge